UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER GELLMAN, *et al.*,<br><br>                    Petitioners,<br><br>     v.<br><br>ANDREA HUNSINGER, *et al.*,<br><br>                    Respondents. | Case No. 18-cv-2641-BAS-AGS<br><br>**ORDER:**<br><br>**(1) GRANTING PETITIONERS' MOTION TO CONFIRM ARBITRATION AWARD (ECF No. 22); AND**<br><br>**(2) DENYING RESPONDENTS' MOTION TO VACATE ARBITRATION AWARD (ECF No. 23).** |

Peter Gellman and Palmerston LLC (together, Petitioners) and Andrea Hunsinger and Advanced Wealth Plan (together, Respondents) are financial advisors in the business of selling life insurance policies. The parties entered an arbitration following a dispute on dividing the commissions from the sales of certain life insurance policies. The Arbitrator entered an award in favor of Petitioners on all claims, finding that Respondents owe

Petitioners compensatory damages, emotional distress damages, and punitive damages, in addition to legal fees incurred by Petitioners to compel arbitration.

Respondents ask the Court to vacate the arbitration award, arguing that the award exceeds the arbitrator's powers pursuant to Section 10(a)(4) of the Federal Arbitration Act ("FAA") for two reasons: (1) the Arbitrator expressed a manifest disregard of California law that prohibits solicitation of life insurance without a license; and (2) the Arbitrator's award of attorney's fees, emotional distress damages, and punitive damages is not allowed under the terms of the contract or is in manifest disregard of the law.  Because none of the arguments raised by Respondents fall within the narrow ground on which the Court may vacate an arbitration award under the FAA, the Court **DENIES** Respondent's motion to vacate the award.  (ECF No. 23.)  The Court finds the requirements for confirming the arbitration award are met and **GRANTS** Petitioners' motion to confirm the award.  (ECF No. 22.)

### I.  BACKGROUND

Peter Gellman and Andrea Hunsinger are both in the business of providing financial planning services, including selling life insurance policies to individual clients.  Gellman is the Managing Member of Palmerston LLC, which is based in New Jersey.  Hunsinger is the president and sole shareholder of a California corporation registered as Andrea Hunsinger Jolly An Insurance Services Corporation, under the fictitious business name, Advanced Wealth Plan.

#### A.  The Commission Sharing Agreement

Hunsinger met Gellman in 2016, at a symposium. (Gellman Dep. 14:22–24, 18:7–9, ECF No. 23-4 at 187, 191.)  On or about January 26, 2017, Hunsinger entered into a Commission Sharing Agreement with Gellman "and/or" Palmerston LLC. ("Agreement," ECF No. 1-2, at 26.)  The Agreement provides, in pertinent part, that the parties be "jointly listed as agent or broker" on insurance contracts placed by Gellman/Palmerston LLC, and

that the parties share commissions equally. (*Id.* ¶¶ 2, 4.) The Agreement defines the parties' relationship as that of independent contractors and negates the creation "of a relationship of employee and employer, principal and agent, co-venturer or partner between the [p]arties." (*Id.* ¶ 9.)

The Agreement includes an arbitration provision, which states:

> "[A]ll disputes between the Parties and any claims which may be brought against either Party shall be settled by arbitration administered by the American Arbitration Association. . . . Each party shall bear its own fees, costs and expenses and an equal share of the arbitrators' and administrative fees of arbitration."

(*Id.* ¶ 17.) The Agreement also provides the following:

> "Each Party warrants and represents to the other that the Party . . . is properly licensed and/or certified to solicit and/or transact insurance business pursuant to applicable federal, state, local laws and regulations, and shall maintain in good standing all licenses and permits as may be required under the applicable laws . . . ."

(*Id.* ¶ 11.) At the time the parties executed the Agreement, Gellman was licensed to sell insurance in New Jersey. (ECF No. 23-4, Ex. F at 507.) Gellman obtained a license to sell life insurance in California on October 31, 2017. (ECF No. 23-4, Ex. G at 509.) Palmerston LLC obtained a license to sell insurance in Nevada on November 1, 2017. (*Id.*, Ex. H at 511.)

**B.     The Dispute**

In October 2017, a dispute arose between Gellman and Hunsinger about sharing the commissions generated from selling life insurance policies to Robert Morris, Rick Glassman, and Glassman's wife. On October 19, 2017, Gellman asked Hunsinger if she wanted to participate in a telephone call with Morris, who was then a prospective client. (Gellman Decl. ¶ 11, ECF No. 1-2.) Hunsinger informed Gellman that Morris was her client and that she would take the call alone. (*Id.*) After continuing disagreements as to whether Gellman was entitled to the commissions relating to Morris's life insurance policy,

Hunsinger notified Gellman they could no longer work together. (*Id.* ¶ 12.) Hunsinger considered this notification to be a valid termination of the Agreement (Hunsinger Decl., ECF No. 3-3, ¶ 10(e)), but Gellman understood it to be a breach of the Agreement, (Pet. Compel Arb. at 1, ECF No. 1.). Subsequently, Hunsinger found out that Gellman and Palmerston LLC were not licensed to sell insurance in California. (Hunsinger Decl. ¶ 11.)

### C. The Arbitration

On August 21, 2018, Petitioners filed a Demand for Arbitration with the American Arbitration Association (AAA) against Respondents. (ECF No. 23-4 at 6.) Petitioners argued they were entitled to 50% of the commissions earned by Respondents. (*Id.* at 15.) Petitioners raised eight causes of action: (1) breach of contract, (2) intentional interference with prospective economic relations, (3) negligent interference with prospective economic relations, (4) breach of fiduciary duty, (4) intentional misrepresentation, (5) negligent misrepresentation, (5) conversion, and (6) accounting. (*Id.* at 6–15.) Respondents initially declined to participate in the arbitration and refused to pay their share of the arbitration fees. (Peretz Decl., ECF No. 1-3, ¶¶ 3, 5.) Gellman petitioned to compel arbitration in federal court. (Pet. Compel Arb., ECF No. 1.) Shortly after, Hunsinger agreed to participate in the arbitration and pay her share of arbitration fees but refused to subject her corporation, Advanced Wealth Plan, to the arbitration. (Freni Decl., ECF No. 3-2, ¶¶ 8–9.) The Court granted the petition to compel as to Advanced Wealth Plan. (Order, ECF No. 10.)

The parties proceeded to arbitration before Judge Victor E. Bianchini, whom the AAA appointed as Arbitrator for the matter on February 1, 2019. (Peretz Decl., ECF No. 22-2 at ¶ 4.) During discovery, the Arbitrator excluded the testimony of Glassman and Morris. (ECF No. 23-4 at 124 ¶ 4 (excluding Glassman), 126 ¶ 3 (excluding Morris)). Respondents Hunsinger and Advanced Wealth Plan moved for summary judgment on two issues: (1) whether the Agreement was a valid contract; and (2) whether material issue of fact warranted arbitration on Petitioners' involvement in the sale of the insurance policy to

Morris. (*Id.* at 129.) The Arbitrator denied Respondents' motion for summary judgment. (*Id.* at 1970–96.)

The Arbitrator entered an interim award in favor of Petitioners on December 17, 2020, and a final award on February 8, 2021. (ECF No. 23-4 at 2159–94 (interim award), 2212–54 (final award).) The Arbitrator found that the Agreement was a valid contract, under which Respondents owed an obligation to share the commissions from sales of life insurance policies to the Glassmans and Morris with Petitioners and found for Petitioners on all counts. (Final Award at 2220, 2234–43.) As damages, the Arbitrator awarded Petitioners compensatory damages, statutory interest, legal fees incurred to compel arbitration, emotional distress and general damages, and punitive damages. (*Id.* at 2243–47.) The Arbitrator also granted Petitioners declaratory relief "for 50% of commissions and overrides earned for the eventual placement of insurance for any of the Glassmans, either individually or collectively, by Respondents or their assigns" and "for any insurance policy sold by respondents to Morris in the future, *in the event that Morris cancels his current policy and a clawback were to occur*." (*Id.* at 2253–54.)

On May 7, 2021, Petitioners moved to confirm the arbitration award. (ECF No. 22.) In turn, Respondents moved to vacate the arbitration award. (ECF No. 23.) The Court finds the motions suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).

## II. HUNSINGER'S MOTION TO VACATE ARBITRATION AWARD

### A. Requirements for Vacating the Award

"Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). Limiting judicial review is necessary to avoid rendering arbitration "merely a prelude to a more cumbersome and time-consuming judicial review process." *Id.* (citing *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)).

Section 10(a)(4) of the FAA "authorizes a federal court to set aside an arbitral award 'where the arbitrator[ ] exceeded [his] powers.'" *Oxford Health Plans*, 569 U.S. at 569 (citing 9 U.S.C. § 10(a)(4)). "A party seeking relief under that provision bears a heavy burden." *Id.* "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans*, 569 U.S. at 569; *see McKesson Corp. v. Loc. 150 IBT*, 969 F.2d 831, 833 (9th Cir. 1992) ("[I]f, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced."). "It is not enough for petitioners to show that the panel committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010); *see Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) ("'Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review' of an arbitral award under the FAA." (quoting *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009)); *see also First State Ins. Co. v. Nat'l Cas. Co.*, 781 F.3d 7, 11 (1st Cir. 2015) ("A legal error (even a serious one) in contract interpretation is, in and of itself, not a sufficient reason for a federal court to undo an arbitration award.").

A court may vacate an award under Section 10(a)(4) only if the arbitrator issues an award that fails to "draw[] its essence from the contract." *Oxford Health Plans*, 569 U.S. at 569 (quoting *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)); *see Stolt-Nielsen*, 559 U.S. at 671 ("It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam))). "An arbitration award 'draws its essence from the agreement' if the award is derived from the agreement, viewed 'in light of the agreement's language and context, as well as other indications of the parties' intentions.'" *Aspic Eng'g*, 913 F.3d at 1166. Accordingly, "the sole question for [the

Court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans*, 569 U.S. at 569.

An arbitrator's expression of "manifest disregard of law" provides a ground to vacate an arbitration award under Section 10(a)(4). *Bosack*, 586 F.3d at 1104. "[F]or an arbitrator's award to be in manifest disregard of the law, '[i]t must be clear from the record that the arbitrator [] recognized the applicable law and then ignored it.'" *Id.* (quoting *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009)). The moving party bears the burden to "show that the arbitrator 'underst[oo]d and correctly state[d] the law, but proceed [ed] to disregard the same,'" by pointing to concrete evidence in the record. *See id.* (quoting *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007)).

### B.    Propriety of Vacating the Award

Respondents argue the Arbitrator exceeded his powers by (1) expressing a manifest disregard for California law requiring license to solicit the sales of life insurance policies and (2) awarding Petitioners attorney's fees, emotional distress damages, and punitive damages. The Court addresses each argument in turn.

#### 1.    Compliance with California Licensure Rules

Respondents argue that the Arbitrator's finding that the Agreement was a valid and enforceable contract contradicts Paragraph 11 of the Agreement, which states in full:

> "Each Party warrants and represents to the other that the Party . . . is properly licensed and/or certified to solicit and/or transact insurance business pursuant to applicable federal, state, local laws and regulations, and shall maintain in good standing all licenses and permits as may be required under the applicable laws . . . ."

(Agreement ¶ 11.) The Arbitrator found that Petitioners did not violate Paragraph 11 by not obtaining a California license in a timely manner because, among others, the life insurance policy from which Petitioners sought to obtain their share of the commission was

issued under the laws of Nevada, where Palmerston LLC was properly licensed at the time the policy was placed. (Final Award at 2222, 2224.) As to Respondents' argument that Gellman violated Section 1633 of the California Insurance Code by soliciting insurance in California without a license, the Arbitrator considered evidence of Gellman's conduct and found no violation of the statute. (*Id.* at 2222–24.)

Assuming without deciding that the Arbitrator erred as Respondents suggest, the FAA does not empower the Court to review an arbitration award for legal or factual errors. *See Aspic Eng'g*, 913 F.3d at 1166; *First State Ins.*, 781 F.3d at 11. The question is whether the Arbitrator dispensed his own brand of justice by straying from interpretation and application of the Agreement. *Stolt-Nielsen*, 559 U.S. at 671. Respondents have not established that the Arbitrator failed to draw the essence of the award from the Agreement. To the extent that Respondents seek to vacate the award on the ground that the Arbitrator expressed "manifest disregard" of the law, they have not pointed to any evidence in the record that would demonstrate that the Arbitrator understood and correctly stated the law but deliberately disregarded it. *See Bosack*, 586 F.3d at 1105. Therefore, the Court finds no ground to vacate the Arbitrator's award.

### 2.   Award of Attorney's Fees and Damages

#### a.   Attorney's Fees

When Petitioners filed a Demand for Arbitration with the AAA against Respondents, Respondents initially declined to participate in the arbitration and refused to pay their share of the arbitration fees. (Peretz Decl., ECF No. 1-3, ¶¶ 3, 5.) Only after Petitioners moved to compel arbitration in federal court, Respondents agreed to arbitrate. The Arbitrator found that because of Respondents' initial refusal to arbitrate, Petitioners expended $8,400 to prepare and file the petition to compel arbitration. (Final Award at 2214.) The Arbitrator included the $8,400 in computing the damages incurred as a result of Respondents' breach of contract. (*Id.* at 2244.)

Respondents argue the award of attorney's fees contradict the arbitration clause of the Agreement, which requires the parties to bear their own fees and costs. That clause states: "Each Party shall bear its own fees, costs and expenses and an equal share of the arbitrators' and administrative fees of arbitration." (Agreement ¶ 17.) Construing a similar provision, a district court sitting in this circuit declined to vacate an award of attorney's fees included as damages of a breach of contract claim. *See Lucile Packard Children's Hosp., Stanford Hosp. Clinics v. U.S. Nursing Corp.*, No. C 02-0192 MMC, 2002 WL 1162390, at *5 (N.D. Cal. May 29, 2002). There, the contract binding parties to arbitration stated that "[t]he arbitrator shall have no authority to order either party to pay the costs of arbitration or attorney fees of the other party." *Id.* at *5. Notwithstanding this contractual provision, the arbitrator, upon a finding that the respondent breached the arbitration clause by filing suit in state court rather than proceeding with arbitration, awarded attorney's fees as damages to petitioners. *Id.* The district court found that the contractual provision was susceptible to the interpretation that "[the provision] preclude[s] the arbitrator from awarding attorney's fees incurred in connection with a party's participation in the arbitration proceeding, but . . . imposes no limitation on the type of damages that can be awarded on an arbitrable claim." *Id.* Finding that the arbitrator impliedly adopted that interpretation, the court concluded that the award drew its essence from the contract.

Here, too, the Agreement's provision that the parties "shall bear [their] own fees, costs, and expenses and an equal share of the fees of arbitration" is susceptible to an interpretation that permits awarding attorney's fees as a part of the damages for an arbitrable claim. The Arbitrator's inclusion of the attorney's fees as damages for Respondents' breach of the arbitration clause is consistent with a plausible interpretation of the parties' Agreement. Thus, the Arbitrator's award draws its essence from the Agreement, and the Court does not find that the Arbitrator exceeded his authority by dispensing his own brand of industrial justice.

//
//

### b. Emotional Distress and Punitive Damages

The Arbitrator awarded Petitioners emotional distress damages to compensate Gellman for his "loss of sleep and increased stress as a result of Hunsinger's conduct forming the basis of his claims." (Final Award at 2245.) The Arbitrator also awarded Petitioners punitive damages. (*Id.* at 2245–47.) Respondents argue that the Arbitrator exceeded his powers by awarding emotional distress and punitive damages in violation of California law and the Constitution. The Court addresses each argument raised by Respondents in turn.

### i. Consideration of Litigation Misconduct and Contractual Obligations

Under California law, in an action for the breach of an obligation not arising from contract, the prevailing party may recover punitive damages in addition to actual damages where the losing party "has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). In awarding punitive damages, the Arbitrator found that Hunsinger's conduct underlying the breach of contract also gave rise to the torts of intentional interference with prospective economic relations, fraud, and conversion. (Final Award at 2245.) The Arbitrator further found that Hunsinger lied under oath throughout the arbitration and spoliated evidence by deleting important text messages she exchanged with Glassman. (Final Award at 2245–46.) Finding that such conduct evidenced the requisite malice, oppression, and fraud, the Arbitrator awarded Petitioners punitive damages. (*Id.* at 2245–47.)

Respondents argue that the Arbitrator exceeded his powers by considering Petitioners' conduct that goes to the breach of contract. Respondents also argue that the Arbitrator should not have considered Hunsinger's conduct during litigation to decide whether to grant punitive damages. In essence, Respondents invite the Court to review the award for legal and factual errors committed by the Arbitrator, but the FAA does not empower the courts to engage in such judicial review of arbitration awards. *See Bosack*,

586 F.3d at 1104. Otherwise, Respondents have not shown that the award fails to draw its essence from the Agreement. Further, the Court does not find that the Arbitrator's award manifestly disregards the law because Petitioners point to no evidence that would show that "the [A]rbitrator [] recognized the applicable law and then ignored it." *See id.* at 1104–05. Therefore, the Court does not find that the Arbitrator exceeded his powers by considering Hunsinger's contractual obligation and litigation misconduct in awarding punitive damages.

### ii. Breach of Fiduciary Duty

Respondents separately argue that the breach of fiduciary duty does not support the Arbitrator's award of punitive damages. Specifically, Respondents argue that the Arbitrator exceeded his powers by defining the parties' relationship inconsistently with the terms of the Agreement.

Under California law, a fiduciary obligation is created where the person charged with the obligation "either knowingly undertake[s] to act on behalf and for the benefit of another, or . . . enter[s] into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008). Here, the Agreement provides that the parties are independent contractors: "It is understood and agreed upon by the Parties that this Agreement is intended to create an independent contractor relation for all purposes. Nothing contained herein is intended or shall be construed to create a relationship of employee and employer, principal and agent, co-venturer or partner between the Parties." (Agreement ¶ 9.) The Arbitrator found that the parties shared a fiduciary relationship for two reasons: first, the parties were "business partners and/or joint venturers"; and second, the Agreement "required Gellman to place trust in the integrity of Hunsinger." (Final Award at 2239.)

The question is whether the Arbitrator's finding of fiduciary relationship follows a plausible interpretation of the Agreement. Because the Agreement negates the existence of a co-partner or venturer relationship, the first basis for finding a fiduciary relationship—

that the parties were business partners and/or joint venturers—is in direct conflict with the Agreement. However, the same cannot be said as to the second basis—that the parties knowingly undertook to act on behalf and for the benefit of each other. To the extent that the Arbitrator made legal or factual errors, the Court cannot vacate the award on that ground under Section 10(a)(4). *See Aspic Eng'g*, 913 F.3d at 1166; *First State Ins.*, 781 F.3d at 11. Further, the Court does not find that the Arbitrator expressed a manifest disregard of the law. Respondents point to no evidence in the record that would show that the Arbitrator "recognized the applicable law and then ignored it." *Bosack*, 586 F.3d at 1104.

Therefore, the Court does not find that the Arbitrator exceeded his powers.

### iii. Due Process Violation

Hunsinger argues that the Arbitrator's award of $375,000 as emotional distress and punitive damages violates her due process rights because the Arbitrator did not consider her ability to pay. As a preliminary matter, the Court is not empowered to review the arbitration award for legal errors, and Respondents have not established that the Arbitrator manifestly disregarded the law. Moreover, the Court does not find that the award violates the Due Process Clause of the Fifth or Fourteenth Amendment. The Court finds instructive a decision by the Eleventh Circuit that rejected a similar argument. *See Davis v. Prudential Sec., Inc.*, 59 F.3d 1186 (11th Cir. 1995). As that court explained: "it is axiomatic that constitutional due process protections 'do not extend to private conduct abridging individual rights,'" and "the state action element of a due process claim is absent in private arbitration case." *Id.* at 1190–91 (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (internal quotations omitted)); *accord Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*, 822 F.2d 833, 842 n.9 (9th Cir. 1987) ("The arbitration involved here was private, not state, action; it was conducted pursuant to contract by a private arbitrator. . . . [W]e do not find in private arbitration proceedings the state action requisite for a constitutional due process claim."). Thus, the Court finds no constitutional violation,

and the Arbitrator did not exceed his powers to the extent that he did not consider Hunsinger's finances.

In sum, Respondents have not shown a basis for vacating the Final Award under Section 10(a)(4) of the FAA. The Court therefore denies their motion to vacate the arbitration award.

### III.   GELLMAN'S MOTION TO CONFIRM ARBITRATION AWARD

#### A.   Requirements for Confirming the Award

"[C]onfirmation of an arbitration award is appropriate only where the parties 'in their agreement have agreed that a judgment of the court shall be entered upon the award." *Com. Enters. v. Liberty Mut. Ins. Co.*, 958 F.2d 376 (9th Cir. 1992); *see Qorvis Commc'ns, LLC v. Wilson*, 549 F.3d 303, 308 (4th Cir. 2008) ("[C]ourts must undertake enforcement of arbitration awards 'so long as the parties *contemplated* judicial enforcement.'") (quoting *Hall St. Assocs.*, 552 U.S. at 587 n.6).

Section 9 of the FAA provides that a district court, upon timely petition, "must" confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9. The court's ultimate review of the petition is "both limited and highly deferential." *Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003) (citing *Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir. 1996)). Confirmation of an arbitration award typically "is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Romero v. Citibank USA, Nat'l Ass'n*, 551 F. Supp. 2d 1010, 1014 (E.D. Cal. 2008) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175–76 (2d Cir. 1984)). This limited and summary review aims to honor the parties' contractual choices and further the FAA's "national policy favoring arbitration and plac[ing] arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *see also Thompson v. Tega-Rand Int'l*, 740 F.2d 762,

763 (9th Cir. 1984) ("Where the parties have agreed to arbitration, the court will not review the merits of the dispute.").

### B. Propriety of Confirming the Award

Petitioners timely filed the motion to confirm the arbitration award in satisfaction of the one-year requirement under Section 9. The Court has denied Respondents' motion to vacate the arbitration award, *see supra* Part II, and the parties do not request that the award be modified or corrected. The parties' arbitration agreement provides that any court of competent jurisdiction may enter judgment. (Agreement ¶ 17.) This language confirms to this Court that the parties contemplated judicial enforcement. *See Qorvis Commc'ns*, 549 F.3d at 308. Although the parties' agreement does not specify a particular court in which a judgment on the award may be entered, Plaintiffs have properly sought a judgment in this Court because the award was made in San Diego, California. *See* 9 U.S.C. § 9.

Because the requirements to confirm an arbitration award are met, the Court confirms the arbitration award.

## IV. CONCLUSION

The Court **DENIES** Respondents' motion to vacate the arbitration award. (ECF No. 23.) The Court **GRANTS** Petitioners' motion to confirm the arbitration award and **CONFIRMS** the arbitration award. (ECF No. 22.)

**IT IS SO ORDERED.**

**DATED: September 20, 2021**

Hon. Cynthia Bashant
United States District Judge